# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL LOVELACE, | ) | CASE NO. 1:20CV00788 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| *Acting Comm'r of Soc. Sec.*, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Michael Lovelace (Plaintiff), challenges the final decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security (Commissioner),[1] denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. (R. 13). For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.    Procedural History

On January 24, 2017, Plaintiff filed his applications for DIB and SSI, alleging a disability onset date of August 1, 2007. (R. 12, Transcript (Tr.) 138-143). Plaintiff subsequently amended his alleged onset date to December 30, 2016. (Tr. 155). The application was denied initially and

---

[1] Pursuant to Rule 25(d), the previous "officer's successor is automatically substituted as a party." Fed.R.Civ.P. 25(d).

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 74-76, 82-89). Plaintiff participated in the hearing on January 17, 2019, was represented by counsel, and testified. (Tr. 31-44). A vocational expert (VE) also participated and testified. *Id*. On February 19, 2019, the ALJ found Plaintiff not disabled. (Tr. 12-30). On February 14, 2020, the Appeals Council (AC) denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-6). Plaintiff's complaint challenges the Commissioner's final decision. (R. 1).

The parties have completed briefing in this case. (R. 15, 17, 18). Plaintiff asserts that the ALJ: failed to properly evaluate the totality of the evidence (R. 15, PageID# 462), erred in his credibility determination (R. 15, PageID# 467), and did not meet his burden at Step Five of the sequential analysis (R. 15, PageID# 470).

## II.    Evidence
### A.    Relevant Medical Evidence[2]

#### 1.    Treatment Records

The ALJ summed up Plaintiff's medical information regarding treatments prior to the onset date in his disability application as follows:

> On March 11, 2015, the claimant presented for a diagnostic assessment update at Appleseed Community Mental Health Center (Appleseed) with Bill Weberling, MA, LPCC. He had initially begun treatment in February 2012, but the record contains no treatment records from Appleseed prior to 2015, except for his initial evaluation in 2012. He reported depression and anxiety with difficulty concentrating, worry, irritability, fatigue, lack of motivation, daily-depressed mood, low self-esteem, and a sense of hopelessness. He had legal problems at the time of his initial admission in 2012, but these were resolved. He was living in Appleseed housing and was seeking employment. He was

---

[2]  The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

prescribed Celexa and Clonidine. He was diagnosed with major depressive disorder, generalized anxiety disorder, and borderline personality disorder. He was referred for counseling, pharmacological management, case management services, and supported employment (Exhibits B5F/8-18 and B9F).

The claimant again presented for a diagnostic assessment update at Appleseed on September 2, 2015. He reported that he was still struggling with depression, social isolation, lack of motivation, low self-esteem, feelings of hopelessness, difficulty concentrating or making decisions, low energy, and fatigue. It was noted that he went to the library daily and walked dogs at the dog shelter twice a week. A mental status examination showed demeanor, eye contact, and activity to be average. Speech was clear. He reported no delusions, suicidal ideation, aggression, or hallucinations. Thought processes were logical. His mood was mildly depressed and moderately anxious. Affect was flat and constricted. He was noted to have impaired attention and concentration. Intelligence was estimated to be average. He was to continue with outpatient services (Exhibit B5F/4-7).

The claimant was seen by his Appleseed psychiatrist on February 4, 2016. It was noted that he was last seen on June 26, 2015. He had poor hygiene and was disheveled. He complained of depression, feeling overwhelmed, feeling down, and a decrease in sleep. He denied any suicidal ideation. At that time, he requested that Celexa be restarted. His psychiatrist restarted Celexa and advised him that he needed to remain on the medication (Exhibit B6F/l 5-16).

On April 19, 2016, the claimant reported that he was sleeping well. He would sometimes forget to take his medication but it was helping to control his depression, although he still felt a little depressed. He was working with the vocational department to try to find work. He reported some drowsiness resulting from the medication. Mental status examination was generally unremarkable. He was referred for group counseling, in addition to the other services he was receiving from Appleseed (Exhibit B6F/13-14).

On May 17, 2016, the claimant again reported that he was doing well with medications. He stated that, "things could be better but could be worse." Energy had improved, and he was less depressed. He stated that he became more anxious in crowds. Mental status examination was generally unremarkable. He reported that his mood felt level, although anxiety continued. Wellbutrin XL was added to his medication regimen (Exhibit B6F/l l-12).

The claimant requested an increase in his Wellbutrin dosage on July 11, 2016. He was sleeping during the day and not sleeping well at night. He was trying to find work. Mental status examination was generally unremarkable. After his dosage was increased, he reported that he had not noticed a significant difference in symptoms. He stated that he had been depressed for couple of days

on September 9, 2016. However, on October 31, 2016, he reported that his medications were working. He had no concerns and was still looking for work. Mental status examination was generally unremarkable, except that his mood was mildly depressed (Exhibit B6F/3-6, 9-10).

(Tr. 20-22).

Plaintiff's treatment records after his disability onset date of December 30, 2016 are summarized as follows:

| Date | Service | Summary | Tr. |
|------|---------|---------|-----|
| 1/18/17 | Appleseed | **Reported:** medications were working "pretty good." **Examination:** Mood was depressed and anxious, but his thought process was linear, his behavior was cooperative, his cognition, insight, and judgment were fair, his appearance was casual with no notes of hygiene or grooming deficits, and he denied hallucinations, delusions, and suicidal or homicidal ideation. | 286-97 |
| 2/8/17 | Alayna Webb<br><br>Case Manager | **Daily activities questionnaire:** Plaintiff lived alone in an agency-owned apartment and struggled to maintain positive relationships with a few of his neighbors but had a great relationship with his aunt. Plaintiff had extremely poor stress tolerance, was fearful of talking to others, and was afraid of new tasks. Plaintiff needed encouragement to perform household chores, did not handle his own finances, and dressed "okay," but his clothes were often dirty. Plaintiff could complete some tasks including food preparation, shopping, and taking public transportation, and his hobbies included reading and using a computer. | 302-03 |
| 4/4/17 | Appleseed | **Reported:** depression, half his days were good, half were bad, and his medications were "ok." **Examination** largely unremarkable, casual appearance; linear thought process; no hallucinations or delusions; no suicidal or homicidal ideation; fair insight and judgment; and behavior within normal limits | 305 |
| 5/23/17 | Alayna Webb | **Daily activities questionnaire:** Plaintiff saw family once a week for two to three hours, saw friends about twice a week, and had befriended a neighbor. Plaintiff had been fired from a deli in 2007 for failing to keep a fast enough pace, and the noted his poor stress tolerance. Plaintiff exhibited "very poor hygiene;" he performed tasks like food preparation and household chores slowly, he volunteered at a dog shelter, was "very good at this" and it was relaxing for him. | 307-08 |

4

| 6/19/17 | Appleseed | **Reported:** medications were "ok" and that they made him "feel more even". **Examination:** largely unremarkable | 368-69 |
|---------|-----------|----------------------------------------------------------------------------------------------------------------|--------|
| 9/11/17 | Appleseed | **Reported**: medications made him "groggy/spacey." **Examination:** largely unremarkable. | 364-65 |
| 3/26/18 | Dr. Vellanki | **Reported:** medications had been "really helping." **Examination**: depressed mood; intellectual functioning, memory, thought process, associations, appearance and clothing, eye contact, emotional state, perception, and insight and judgment were within normal limits; cooperative behavior; average intelligence. | 352-63 |
| 7/10/18 | Dr. Vellanki | **Reported:** "Things are going really well with my job"; depressive symptoms improving, and generalized anxiety disorder symptoms "minimal." Work was going well, despite issues with coworkers treatment of another. **Examination:** anxious mood; intellectual functioning, memory, thought process, associations, appearance, clothing, eye contact, perception, insight, judgment, and facial expressions within normal limits; cooperative behavior; average intelligence. | 340-51 |
| 9/11/18 | Dr. Vellanki | **Reported:** Wellbutrin was helping. Work "in shipping has been less busy than in the past [and] feels his work performance has been good"; generalized anxiety disorder symptoms were minimal and improving, and borderline personality symptoms were stable. | 328-38 |
| 10/26/18 | Dr. Vellanki | **Reported**: minimal depression and anxiety-related symptoms. Good work performance. **Examination:** depressed mood; cooperative behavior; average intelligence; intellectual functioning, memory, thought process, associations, appearance and clothing, eye contact, perception, and insight and judgment within normal limits. | 316-27 |

## 2. Medical Opinions Concerning Plaintiff's Functional Limitations

On March 9, 2017, state agency psychological consultant Jennifer Swain, Psy.D. reviewed Plaintiff's records. (Tr. 54-57). Dr. Swain opined that Plaintiff did not meet Listings 12.04 and 12.06, and had no limitations in understanding, remembering, or applying information or in concentrating, persisting, and maintaining pace, with moderate limitations in interacting with others and adapting or managing oneself. (Tr. 54-55). Dr. Swain concluded that Plaintiff could perform tasks that did not require more than: occasional

interactions with the general public, brief and superficial interactions with coworkers and supervisors, and strict production or time standards. (Tr. 56-57).

On June 1, 2017, state agency psychological consultant Juliette Saviscus, Ph.D. reviewed Plaintiff's records. (Tr. 66-70). Dr. Saviscus opined that Plaintiff did not meet Listings 12.04 and 12.06. (Tr. 66-67). Regarding the paragraph "B" criteria, Dr. Saviscus opined that Plaintiff had moderate limitations in all four broad functional areas. (Tr. 67). Dr. Saviscus concluded that Plaintiff could carry out simple, repetitive tasks without demands for fast pace, high production, or time standards; he could have occasional interactions with the public and brief and superficial interactions with coworkers and supervisors. (Tr. 68-70).

### B.      Relevant Hearing Testimony

At the January 17, 2019 hearing, Plaintiff testified as follows:

- He has not worked since October 2018, when he quit his job due to a panic attack. He also struggled with attendance and pace.
- He treated at Appleseed every three months for medication management and typically saw a counselor one to two times a month.
- When he was working, his counselor visited him once a week. After he left his job, his counselor began visiting him every day to help him stay on top of cleaning and hygiene because otherwise he would be at risk of eviction from the Appleseed housing.
- He is close with his aunt, who reminds him to take medication and to take showers. He sleeps 12 hours a day, reads, watches television, and visits the library twice a week, although he reported having trouble going out, and a fear of crowds. Plaintiff indicated that his difficulty leaving the house got worse in March 2017.

(Tr. 34-40).

During the administrative hearing, the ALJ posed the following hypothetical question to the VE:

If I found that Mr. Lovelace had no exertional limitations and he retained the

ability to understand, remember and carry out simple repetitive tasks, able to respond appropriately to supervisors and coworkers in a task-oriented setting with only occasional public contact and occasional interaction with coworkers, and able to adapt to simple changes and avoid hazards in a setting without strict production quotas, would there be any unskilled work in the regional or national economy he could perform?

(Tr. 41-42). The VE testified that such an individual could perform work as a janitor with nearly 60,000 such jobs in the national economy, linen room attendant with 52,320 jobs in the national economy, and dishwasher with 498,110 jobs in the national economy. (Tr. 42). The VE further testified that if the claimant would miss work at least two days a week, he would be precluded from employment. (Tr. 42). The VE explained that the off-task tolerance "[i]n unskilled, work activities, all exertional levels [is] 10 to 12 percent off task outside the scheduled breaks and lunch breaks." (Tr. 43).

## III.   Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6ᵗʰ Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6ᵗʰ Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the

7

claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

1.    The claimant has not engaged in substantial gainful activity since December 30, 2016, the application date (20 CFR 416.971 et seq.).

2.    The claimant has the following severe impairments: depression, anxiety, and personality disorder (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.   After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: able to understand, remember, and carry out simple, repetitive tasks; able to respond appropriately to supervisors and coworkers in a task-oriented setting with only occasional public contact and occasional interaction with coworkers; and able to adapt to simple changes and avoid hazards in a setting without strict production quotas.

5.   The claimant has no past relevant work (20 CFR 416.965).

6.   The claimant was born on *** 1986 and was 30 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.   The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since December 30, 2016, the date the application was filed (20 CFR 416.920(g)).

(Tr. 17-26).

## V.   Law and Analysis

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. (*Id.*) However, the court does not

review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B.      Plaintiff's Assignments of Error

#### 1.      First Assignment of Error

Plaintiff's first assignment of error is framed as a general challenge to the ALJ's evaluation of the totality of the evidence, but this general challenge encompasses several arguments regarding the ALJ's determinations at Step Three of the sequential analysis and the ALJ's assessment of certain medical opinions.

##### a)      Step Three

Plaintiff asserts that the ALJ erred at Step Three by finding that his combined impairments did not meet a listed impairment. (R. 15, PageID# 466). Specifically, Plaintiff challenges the ALJ's conclusion regarding the paragraph B criteria necessary to satisfy Listing 12.04, 12.06, or 12.08 ("the Listings"). (R. 15, PageID# 462).

To meet Listings, the claimant must show his impairments satisfied the criteria in paragraphs A and B (or C). 20 C.F.R. pt. 404, subpt. P, App. 1, §§ 12.00, 12.04, 12.06, 12.08. Because Plaintiff questions the ALJ's findings as to the paragraph B criteria, he must establish

that he has a qualifying affective disorder that results in at least one extreme or two marked limitations in the following broad areas of functioning: 1) understanding, remembering, or applying information; 2) interacting with others; 3) concentrating, persisting, or maintaining pace; or 4) adapting or managing themselves (collectively referred to as the "paragraph B criteria"). 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.04. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.00 (F)(2)(d). An extreme limitation means that the claimant is not able to function in an area independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P, App.1, Listing 12.00 (F)(2)(e).

The ALJ's decision concluded that Plaintiff was moderately limited in each of the paragraph B criteria. Regarding the area of understanding, remembering, or applying information, the ALJ noted that Plaintiff's mental status examination showed average intelligence, although he earned low grades and had an individualized education plan in high school due to comprehension issues. (Tr. 18). Moreover, Plaintiff testified that he liked to read and went to the library twice a week—reasonable evidence upon which the ALJ relied upon. (*Id*.). The ALJ concluded that Plaintiff "appeared to have no significant difficulties with understanding information outside of the school setting[.]" (Tr. 18). In his argument, Plaintiff does not contest these statements. Instead, he points to records indicating that he struggled in school and needed reminders to take medications and keep appointments. (R, 15, PageID# 462-463). In addition to recognizing the school issues, the ALJ also noted the case manager's statements that Plaintiff needed reminders regarding appointments and medications. (Tr. 18). Plaintiff, however, does not point to any evidence that the ALJ failed to consider; rather, he disagrees with the ALJ's conclusions regarding the evidence. (R. 15, PageID# 462).

11

The ALJ's decision concluded that Plaintiff had moderate limitations in the area of interacting with others. (Tr. 18). The decision noted that Plaintiff's case manager indicated that he was timid and fearful in job interviews, that he struggled to maintain good relationships with his neighbors, and that his mental health symptoms prevented him from expressing himself and feeling comfortable around others. (Tr. 18). However, the ALJ noted, Plaintiff had two friends from school that he visited two to three times a week, befriended a neighbor, was close with his aunt, and visited with his family once a month. (Tr. 18). Further, the ALJ noted the evidence established Plaintiff visited the library each week, volunteered at a dog shelter, and worked temporary jobs without any indications of difficulties working with others. (Tr. 18). The only evidence supporting significant difficulties in this area stemmed from Plaintiff's case manager and his own testimony, but the ALJ concluded the treatment records do not support these reported difficulties. (Tr. 18). Plaintiff points to records that he believes could have supported greater limitations, such as Dr. Clark's 2011 neuropsychological evaluation, but the ALJ considered assigned no weight to it because it was too remote in time. (R. 15, PageID# 463, *citing* Tr. 253, 302; Tr. 18). Again, Plaintiff merely disagrees with the ALJ's conclusions regarding this information.

The ALJ concluded that Plaintiff had a moderate limitation in concentrating, persisting, or maintaining pace, while also acknowledging Plaintiff's 2015 mental status exam, noting impaired concentration and attention, his history of Attention Deficit Disorder, and the fact that he lost a job in 2007 because he could not work at a fast enough pace. (Tr. 19). However, the ALJ further explained that treatment notes indicated that Plaintiff consistently reported to his psychiatrist that his employment performance was good at a temporary job in 2018. (Tr. 19). In addition, the ALJ noted that Plaintiff could concentrate and maintain attention while reading and watching television. (*Id*). Moreover, the ALJ recognized and assessed the evidence noted by the Plaintiff—again

primarily the rejected 2011 evaluation of Dr. Lewis. (R. 15, PageID# 463-464; Tr. 18, 24). After weighing the record evidence, however, the ALJ determined it did not support more than a moderate limitation. (*Id*). Here too, Plaintiff's mere disagreement with the ALJ's weighing and consideration of the evidence does not provide a basis for remand.

Regarding adapting or managing oneself, the ALJ determined Plaintiff had a moderate limitation. (Tr. 19). The ALJ noted that although Plaintiff's case manager's questionnaires suggested significant difficulties in this area, there were no records to substantiate her reports. (Tr. 19). As the ALJ concluded, Plaintiff's treatment records showed that he was able to maintain employment with good work performance. (Tr. 19). Plaintiff does not contest the ALJ's statements, but rather, suggests that his poor hygiene could have warranted a marked limitation in this area. (R. 15, PageID# 464-465).

Although Plaintiff cites to evidence in the record to support his view of the case, he does not contest the evidence relied upon by the ALJ. In other words, Plaintiff's argument challenges the weight of the evidence, rather than showing that the ALJ's decision was not supported by substantial evidence. If substantial evidence supports the ALJ's decision, then the decision must stand even if the evidence could support an opposite conclusion. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Her v. Commissioner*, 203 F.3d 388, 389-390 (6th Cir. 1999). The court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d at 681. Plaintiff fails to establish that the ALJ's decision concerning the Paragraph "B" criteria was not supported by substantial evidence.

### b) Weight of State Agency reviewers and Plaintiff's Case Manager

Plaintiff takes issue with the ALJ's decision to assign partial weight to the assessments from the State Agency reviewers, Drs. Swain and Savitscus, with more weight to Dr. Savitscus.

(R. 15, PageID# 466). Although Plaintiff's argument is succinct and undeveloped, it is important to recognize that "the regulation requiring an ALJ to provide 'good reasons' for the weight given a treating physician's opinion does not apply to an ALJ's failure to explain his favoring of one non-treating source's opinion over another." *Williams v. Colvin*, 2015 U.S. Dist. LEXIS 117105, 2015 WL 5165458 at \*5 (N.D. Ohio, Sept. 2, 2015) (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496 (6th Cir. 2006); accord *Chandler v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 90128, 2014 WL 2988433 at \*8 (S.D. Ohio, July 1, 2014) ("the ALJ is not required to give 'good reasons' for rejecting a nontreating source's opinions in the same way as must be done for a treating source"). While a claimant may disagree with the ALJ's explanation for assigning less weight to a non-treating medical source, such disagreement does not provide a basis for remand. *See, e.g.*, *Steed v. Colvin*, 2016 U.S. Dist. LEXIS 114027, 2016 WL 4479485 (N.D. Ohio Aug. 25, 2016) (McHargh, M.J.).

In assessing these opinions, the ALJ stated:

As for the opinion evidence, Jennifer Swain, Psy.D. reviewed the evidence on behalf of the Division of Disability Determination (DDD) on March 9, 2017 (Exhibit 2A). Dr. Swain opined that the claimant was capable of performing tasks that did not require more than occasional interactions with the public. Interactions with coworkers and supervisors should be brief and superficial. Further, he was capable of performing tasks that did not require strict production or time standards. Juliet Savitscus, Ph.D. also reviewed the evidence on behalf of the DDD on June 1, 2017 (Exhibit 4A). Dr. Savitscus opined that he retained the capacity to understand, remember, and carry out simple, repetitive tasks in a setting without demands for fast pace or high production. Dr. Savitscus otherwise affirmed the assessment of Dr. Swain. The undersigned gives partial weight to the assessments of the DDD reviewers, with more weight given to Dr. Savitscus. Generally, the limitations assessed by the DDD reviewers have been adopted in the above-described residual functional capacity. Limitations for simple, repetitive tasks without production demands are consistent with the objective evidence. However, the limitation for brief and superficial social interactions with supervisors and coworkers was not, as the term "superficial" is not defined by Social Security regulations. Further,

evidence of work activity without significant difficulties interacting with others suggests an ability for more than brief interactions with supervisors and coworkers.

(Tr. 23-24).

The Plaintiff provides no substantive argument to support his suggestion that the ALJ erred in assessing the weight of these physicians. (R. 15, PageID# 466). Plaintiff's brief next contends that the ALJ erred by assigning partial weight to Plaintiff's case manager, Alayna Webb, "no weight to the neuropsychological evaluation and little weight to the statement from Dr. Tourlas." (R. 15, PageID# 466-467). Absent, however, is any attempt to develop an argument to support these conclusory statements. *Kennedy*, *supra*. The court cannot take such a conclusory and undeveloped assertions and transform them into a substantive argument on Plaintiff's behalf without improperly becoming an advocate for Plaintiff. "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997). It is well established that "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Kennedy v. Commissioner*, 87 Fed. Appx. 464, 2003 WL 23140056, at *1 (6th Cir. 2003) (citing *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)) (rejecting perfunctory argument)). The court deems these undeveloped arguments without merit and forfeited.

Plaintiff contends that ALJ's RFC was based on "cherry picking or ignoring evidence documenting Plaintiff's difficulties in the past." (R. 15, PageID# 467). Such arguments are often misplaced and rarely successful. The Sixth Circuit has found that a claimant's allegation of cherry-picking evidence by an ALJ unavailing on appeal, agreeing with the court below that such an "allegation is seldom successful because crediting it would require a court to re-weigh record

evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. Apr. 3, 2014) (*citing White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) (finding "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence.")); *accord Hammett v. Comm'r of Soc. Sec.*, No. 16-12304, 2017 WL 4003438, at *3 (E.D. Mich. Sept. 12, 2017); *Cromer v. Berryhill*, No. CV 16-180-DLB, 2017 WL 1706418, at *8 (E.D. Ky. May 2, 2017); *Anderson v. Berryhill*, No. 1:16CV01086, 2017 WL 1326437, at *13 (N.D. Ohio Mar. 2, 2017) *report and recommendation adopted*, 2017 WL 1304485 (N.D. Ohio Apr. 3, 2017).

The Sixth Circuit has made clear that it is the responsibility of the ALJ to weigh record evidence and resolve the conflicts in the record where there are conflicting opinions resulting from essentially the same medical data. *See, e.g., Martin v. Comm'r of Soc. Sec.*, 170 Fed. App'x 369, 373 (6th Cir. 2006) ("The ALJ had the duty to resolve conflicts in medical evidence"); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see generally Webb v. Commissioner*, 368 F.3d 629, 633 (6th Cir. 2004) (ALJ's responsibility to evaluate medical evidence and claimant's testimony to assess RFC). "It is the duty of the ALJ, as the trier of fact, to resolve conflicts in the medical evidence." *Hensley v. Astrue*, No. 12-106, 2014 WL 1093201 at *4 (E.D. Ky. Mar. 14, 2014) *citing Richardson v. Perales*, 402 U.S. 389, 399 (1971)). "It is the ALJ's place, and not the reviewing court's, to resolve conflicts in evidence." *Collins v. Comm'r of Soc. Sec.*, 357 F. App'x 663, 670 (6th Cir. 2009) (citations omitted).

Accordingly, Plaintiff's assignment of error regarding the weight the ALJ assigned to various medical opinions is overruled.

16

### 2. SSR 16-3p

In the second assignment of error, Plaintiff contends that the ALJ did not comply with SSR 16-3p, 2017 WL 5180304 (S.S.A. Oct. 25, 2017), in evaluating his subjective symptoms.

Plaintiff challenges the ALJ's conclusion "that the evidence did not support Plaintiff's assertion that he had not been able to work at any time since the alleged onset date (Tr. 20)." (R. 15, PageID# 469). Plaintiff contends that the ALJ did not properly evaluate the medical evidence and make a defensible determination as to whether Plaintiff's testimony was credible. (R. 15, PageID# 469).

For example, in making a disability determination, the ALJ considers all the claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. [The ALJ] will consider all of [the claimant's] statements about [the claimant's] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." 20 C.F.R. §404.1529(a).

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability")). However, a claimant's statements as to "pain or other symptoms will not alone establish that [she is] disabled...." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). An

ALJ conducts a two-part analysis to evaluate a claimant's subjective statements of pain when the symptoms rather than that underlying condition form the basis of the disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment [MDI] that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's alleged symptoms "based on a consideration of the entire case record." *Id.*

SSR 16-3p lists the factors relevant to the ALJ's determination at the second step of the sequential evaluation. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3p, 2016 SSR LEXIS 4 at *19, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 U.S. App. LEXIS 19463, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017). While an ALJ is not required to explicitly address each factor, the ALJ should sufficiently articulate specific reasons for the credibility determinations so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec*., 373 F. Supp. 2d 724, 733

(N.D. Ohio 2005).

The ALJ's underlying decision summarized the Plaintiff's allegations as follows: "The claimant alleged that he was unable to work because of attention deficit hyperactivity disorder (ADHD), bipolar, anxiety, and borderline personality disorder." (Tr. 20). In conducting the above analysis, at Step One, the ALJ stated,

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

*(Id.)*.

Regarding Step Two, Plaintiff contends that the ALJ did "even mention the evidence which supported Plaintiff's credibility about his symptoms" and therefore the analysis was insufficient and not in compliance with SSR 16-3p. (R. 15, PageID# 469). According to Plaintiff, the ALJ committed harmful error. Despite asserting that the ALJ failed to apply the proper legal standards, Plaintiff does not argue that the ALJ failed to consider any of the factors set forth in SSR 16-3p, or that the ALJ failed to explain the credibility determinations. Rather than challenge the process the ALJ followed when making the credibility determinations, Plaintiff takes issue with the conclusion of those determinations.

For example, Plaintiff contends that the ALJ's determination that the evidence did not support his assertion that he had not been able to work at any time since the alleged onset date disregarded "all the evidence as set forth in the First Argument herein." (R. 15, PageID# 469). He further contends that the finding does not consider the evidence that the Plaintiff saw his case manager every day, since he wed working, for help with cleaning, hygiene, and medication. *(Id.)*.

Plaintiff does not provide any substantive argument beyond these statements. Further, as noted above, the ALJ properly considered, assessed, and weighed these reports and statements. Thus, Plaintiff is not making an argument that the ALJ failed to follow the procedure set forth in SSR-16-3p, but rather disagreeing with the outcome of the ALJ's credibility determinations.

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 U.S. Dist. LEXIS 121965, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Although the ALJ's credibility determinations must be "based on a consideration of the entire case record[,]" *Rogers*, 486 F.3d at 247-248, the ALJ's decision need not explicitly discuss each of the factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Newsome v. Comm'r of Soc. Sec.,* No. 1:18-cv-2707, 2019 U.S. Dist. LEXIS 223785, at *29 (N.D. Ohio Dec. 5, 2019). Plaintiff fails to make and support an argument that the ALJ erred by not considering the SSR-16p factors in assessing the credibility of his statements concerning the effects of his symptoms.

For the above reasons, the second assignment of error is rejected.

### 3. Step Five of the Sequential Evaluation.

In his third assignment of error, Plaintiff contends that the ALJ did not satisfy the burden at Step Five of the sequential evaluation. (R. 15, PageID #: 470).

Once the ALJ determines claimant does not have the residual functional capacity to

perform his past relevant work, the burden shifts at Step Five to the Commissioner to show that claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th 2004); *Varley v. Sec'y, HHS*, 820 F.2d 777, 779 (6th Cir. 1987). To meet this burden, there must be "a finding supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley*, 820 F.2d at 779 (quoting *O'Banner v. Sec'y, HEW*, 587 F.2d 321, 323 (6th Cir. 1978)). The ALJ may rely upon the testimony of a VE at Step Five. "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy*, 594 F.3d at 516; *see also Pasco v. Commissioner of Social Sec.*, No. 03-4358, 2005 WL 1506343, at *13 (6th Cir. June 23, 2005); *Varley*, 820 F.2d at 779 (citing cases).

Plaintiff specifically argues that the ALJ erred by "disregard[ing] the fact that the neuropsychologist, BVR assessment, and psychiatrist from Appleseed all discussed the problems Plaintiff had with concentrating and making decisions[.]" (Tr. 15, PageID# 470). He also contends that the ALJ "disregarded and ignored" evidence that established that Plaintiff would need additional supervision and coaching in order to complete his work assignments. (Tr. 15, PageID# 471). Plaintiff's contentions lack merit.

The ALJ discussed the October 20, 2011 neuropsychologist evaluation, and the November and December 2011 BVR assessments, which were conducted more than five years before the alleged disability onset date. (Tr. 24). After a reasonable discussion, the ALJ gave these

assessments no weight. (*Id.*).[3]  Plaintiff fails to support an argument that the ALJ erred in making this determination. The ALJ also considered the Daily Activities Questionnaires completed by the Plaintiff's case manager, Alayna Webb. (Tr. 24). As noted above, Plaintiff failed to support an argument that ALJ erred in assigning only partial weight to Webb's statements.

Therefore, Plaintiff's third assignment of error lacks merit and is rejected.

## VI.    Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*

David A. Ruiz
United States Magistrate Judge

Date: September 28, 2021

---

[3] "In fashioning a hypothetical question to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Griffeth c. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011).